**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION**

In Re: Pauletta J. Purvis, DebtorNo. 2:09-bk-72968
Ch. 7

**OPINION**

Pauletta J. Purvis, a single person, filed her voluntary, chapter 7 bankruptcy petition on June 16, 2009. On Schedule C, Purvis exempted certain real estate as her homestead under the Arkansas Constitution, article 9, § 5. On September 24, 2009, the chapter 7 trustee objected to the exemption, arguing that Purvis did not qualify as head of the household under Arkansas law, and, therefore, is not entitled to claim the homestead exemption. The trustee also objected to the values of certain personal property listed on the Purvis's schedules. On October 2, 2009, Purvis filed a response. On January 20, 2010, the Court held a hearing [January 20 hearing] on the objection and response. The Court took the matter under advisement and gave the parties time to file simultaneous briefs.

This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The following order constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 9014. For the reasons stated below, the trustee's objection is sustained in part and overruled in part.

**Findings of Fact and Conclusions of Law**

Purvis claims that the property located at 217 Northridge Drive in Van Buren, Arkansas, is her homestead [the Property]. Purvis may claim the Property as her homestead if the Property is exempt as a homestead under applicable state law as of the date of her bankruptcy petition, June 16, 2009. 11 U.S.C. § 522(b)(3)(A). Arkansas law is the

applicable state law in this instance, and article 9, section 3 of the Arkansas Constitution states, in pertinent part:

> The homestead of any resident of this State, *who is married or the head of a family*, shall not be subject to the lien of any judgment or decree of any court, or to sale under execution, or other process thereon, except such as may be rendered for the purchase money, or for specific liens, laborers' or mechanic's liens for improving the same, or for taxes, or against executors, administrators, guardians, receivers, attorneys for moneys collected by them, and other trustees of an express trust, for moneys due from them in their fiduciary capacity.

Ark. Const. art. 9, § 3 (emphasis added). Because Purvis is not married, in order to be eligible for the homestead exemption, she must qualify as "head of a family" under Arkansas law as of the date of filing her bankruptcy petition. Arkansas courts have looked to three factors to determine whether a claimant qualifies as head of a family:

> (1) the existence of an obligation upon the claimant to support others residing in the household . . . (2) the existence of a corresponding state of dependence upon those being supported . . . and (3) the existence of a role of authority for the head of the family where the status or relationship of the family exists.

*In re Collins*, 152 B.R. 570, 572 (Bankr. W.D. Ark. 1992) (citing *Yadon v. Yadon*, 151 S.W.2d 969, 970 (Ark. 1941) and *Harbison v. Vaughan*, 1884 WL 883, at *2 (Ark. 1884)). The homestead claimant does not have to be a husband or a parent, but "something more than a 'mere aggregation of individuals residing in the same house' is required." *Collins*, 152 B.R. at 572 (quoting *Harbison*, 1884 WL 883, at *2 ). Further, the purpose of the Arkansas homestead exemption is "to protect the family from dependence and want. . . . The constitutional provision allowing homestead exemptions is to be liberally construed in favor of the person asserting the exemption." *Collins*, 152 B.R. at 572.

Purvis purchased the Property in 2004, and she has lived in the house located on the Property since that time.[1] Purvis's sole source of income is disability income in the amount of $1495.00 per month, and she has been receiving disability income for two and a half years. Purvis testified that she has not been married while living in the house, nor has she had any children live with her. However, three other people have lived with Purvis at different periods of time and for different reasons—a fiancé and her two brothers, Gary Don Carney and Cecil Carney.[2]

Purvis's fiancé lived with her for about one year and a half, but moved out in September 2007. Purvis testified that her fiancé was unemployed the last six months he was there, and that she was in charge of what her fiancé did around her house. However, without more evidence of her fiancé's dependence on Purvis and her support of him, Purvis does not qualify as a head of a family based on her relationship with her fiancé. Therefore, Purvis's claim as head of a family must be based on her relationship with each of her brothers while they lived with her.

### Purvis's Relationship with Gary Don Carney

Gary first moved in with Purvis at the end of 2007 after he and his wife separated. After a "couple of months," Gary reconciled with his wife and moved out of Purvis's house. Gary and his wife separated again in June 2008, and Gary moved back in with Purvis. Gary has lived with Purvis continuously since June 2008. These dates are based on the testimony of Purvis and Gary, and they conflict with dates contained within an affidavit executed by Gary on September 23, 2009, that was admitted into evidence. The affidavit

---

[1] Before she lived at the house, she lived at "her brother's mobile home in Rudy."

[2] The debtor's attorney stated Cecil Carney's last name during his opening statement. Because the brothers' last names are identical, the Court will refer to each brother by his first name.

states that Gary resided with Purvis between October 2008 and July 2009. The discrepancy between the affidavit and the testimony was explained as clerical error. Purvis testified that her attorney's office "made mistakes" regarding the affidavit, and Gary testified that the attorney's office made at least four corrections to the affidavit. The Court finds that the clerical error explanation is credible and that the testimony at the January 20 hearing as to the dates Gary lived with Purvis is accurate.[3]

For the first two months after Gary moved back in, he had income and helped pay for "groceries and stuff." However, Gary quit his job for health reasons, and, other than the initial financial contributions, Gary has not contributed financially to household expenses. The questions and testimony at the January 20 hearing did not focus specifically on Gary's dependency up to the day the bankruptcy petition was filed, which is the time at which Purvis must have qualified as head of a family in order to claim the homestead exemption. For instance, the testimony at the January hearing was that Gary *suffers* from depression, anxiety, anger issues, sleep apnea, a heart problem, and a bad back; Gary *is* unemployed, but has applied for disability; and Purvis *does* his laundry, and she *purchases* groceries for Gary. However, from the context of the testimony and the fact that there is no indication that Gary's health conditions or Purvis's support began subsequent to the bankruptcy filing, the Court believes that the witnesses were testifying to Purvis's and Gary's relationship generally over the course of his stay with Purvis.

Purvis testified that she provides Gary this support because she has a moral obligation to take care of him. While Gary was not divorced at the time of the January 20 hearing, Gary and his wife have remained separated. Gary does not own a home or an apartment. However, Gary started staying with his mother two to three times a week after his died

---

[3] Further, whether Gary moved out in July 2009 or lived there continuously is not relevant to the issue before the Court as long as Gary was a dependent of the debtor prior to the filing of Purvis's petition.

4

dad in February 2009. Purvis stated their mother is seventy-seven years old and has limited income. Gary also stated that he has recently started babysitting his grandson three days a week, and his grandson lives near Gary's mother. Additionally, Purvis testified that she has authority over Gary when he is in her house. Gary admitted that "she is the boss," and Gary stated that Purvis can kick him out at any time.

### Purvis's Relationship with Cecil Carney

Cecil is Purvis's deceased brother. Purvis admitted in her testimony that between 2004 and the time Cecil passed away, Cecil resided in her house for "periods of time." Gary's affidavit states that Cecil "resided" with Purvis from January 2008 through October 2008. It is unclear what other periods of time Cecil stayed with Purvis or whether he resided with Purvis for various periods of time between January 2008 and October 2008. However, no one testified whether the dates in the affidavit regarding Cecil were incorrect, and the trustee did not challenge them. Therefore, the Court presumes that the affidavit is correct regarding when Cecil lived with Purvis.

It is also unclear whether Cecil was alive when the petition was filed. While Cecil may have died before Purvis filed her bankruptcy petition, a homestead claimant who acquires the right to a homestead exemption is not subsequently deprived of the homestead exemption by the death of family members. *Beeson v. Byars*, 63 S.W.2d 540, 541 (Ark. 1933) (stating that the homestead claimant did not lose his homestead rights when his wife died and son moved away); *Baldwin v. Thomas*, 72 S.W. 53, 54 (Ark. 1903) (homestead claimant was still head of the family and entitled to homestead claim after his mother and sister who lived with him died). Therefore, the fact that Cecil might have died before Purvis filed her bankruptcy petition does not preclude her from claiming head of the family status based on her relationship with Cecil.

Gary testified that Cecil moved in with Purvis after Cecil "got sick." Purvis admitted that

5

she used her disability income to support herself and her brothers, but that "after a while" Cecil received disability income in the amount of $1100.00 per month. Purvis testified that Cecil gave his income to her, and she paid Cecil's bills with Cecil's income, specifically his utilities and student loans. Cecil owned his own home in Fort Smith, Arkansas. Purvis testified that Cecil stayed with her because he had two brain surgeries, a lung surgery, and although Cecil "could do a lot for himself, but he still needed help. . . . He stayed with me for about half the time, he stayed at [their mother's and father's] part of the time, and then he would go home and stay by himself for a few days." Purvis testified that she made sure that Cecil took his medications and that he was fed and bathed. She stated that Cecil ate her food, used her electricity, and did not pay rent. Cecil could not drive and he needed help putting on his shoes.

### Whether Purvis's Relationship with Gary and Cecil Qualifies Purvis as Head of a Family

Purvis's relationships with Gary and Cecil, respectively, satisfy the three factors required to qualify as head of a family under Arkansas law.

### The Existence of an Obligation upon Purvis for Those Residing in the Household

Purvis testified that she had a moral obligation to support her brother Gary. The obligation to support those residing in the household does not have to be a legal obligation. *Collins*, 152 B.R. at 572 (citing *Baldwin* 72 S.W. at 54 (debtor supported mother and single sister) and *Harbison*, 1884 WL 883, at *2 (debtor supported his two nephews and father)). Purvis's actions substantiate her obligation—she does Gary's laundry and provides Gary a place to stay and food to eat. Further, Gary resided in her household. While Gary stays with his mother two to three days during the week, it appears that Gary started staying with his mother as an act of consolation after his father died, and the practice is currently convenient because of Gary's babysitting arrangement. Gary lived with Purvis for about one year before filing her bankruptcy petition, owns no

6

other home or place to stay, and stays at Purvis's house more than fifty percent of the time. For these reasons, the first factor has been met with regard to Gary.

Purvis did not testify expressly that she has a moral obligation to support Cecil, and Purvis had no legal obligation to care for Cecil. However, Purvis provided Cecil basic care, paid his bills, and allowed him to live in her home half of the time for ten months. Based on the type of support she provided Cecil and her familial relationship to him, the Court infers that Purvis felt morally obligated to care for Cecil. Although Cecil only lived with Purvis for ten months before he either moved out or died, the court can find no bright-line requirement that the claimant's dependents reside with the claimant for a certain period of time. Rather, Arkansas courts analyze the three factors above in the light of the relationship between the claimant and resident, and the length of time one resides with a claimant is a fact considered in the overall analysis. *See Adams v. Planters Prod. Credit Ass'n*, 561 S.W.2d 80, 81 (Ark. 1978) (holding that claimant was not head of a family where his claim was based on his relationship with his son whose only "residence was on week-ends or during school vacations.") Further, in the context of determining one's status as an Arkansas resident for tax purposes, "[n]o particular length of time is necessary to establish residence." *Leathers v. Warmack*, 19 S.W.3d 27, 34 (Ark. 2000). However, "something more than a place of temporary sojourning" is required." *Cravens v. Cook*, 204 S.W.2d 909, 910 (Ark. 1947). Cecil consistently returned to Purvis's home. Gary indicated in his testimony that Cecil may have only returned to Cecil's home in order to qualify for his disability income. Even if this were true, there was not enough evidence on this point to impute any wrongdoing to Purvis.

### Corresponding State of Dependancy

Regarding the second element, the Court finds that Gary is correspondingly dependent upon Purvis. While Gary stays with his mother two to three days during the week, it appears that Gary started staying with her as an act of consolation after his father died,

7

and the practice is currently convenient because of Gary's babysitting arrangement. Further, the fact that Gary might be only partially dependent on Purvis does not necessarily defeat Purvis's head of a family claim. *See Collins*, 152 B.R. at 573 (citing *Yadon,* 151 S.W.2d at 970-71 (which holds that a mother's claim of homestead was not defeated even though her daughter was only "partially dependent" upon the mother because "the status of the family was established thoroughly between the mother and daughter during the twenty-five years they had lived together." *Yadon,* 151 S.W.2d at 970. Gary lived with Purvis for a year before she filed her bankruptcy petition. He has contributed minimally to the household, has been unemployed for the vast majority of the time he has lived with Purvis, has various medical problems, and does not own or rent his own home or apartment. In sum, Gary was dependent upon Purvis a year before Purvis filed her bankruptcy petition.

With regard to Cecil, Cecil had health conditions that made him dependent upon Purvis for basic needs during the ten months he lived with her. While he spent half of his time at other residences, as stated above, the fact that Cecil was only partially dependent on the debtor does not defeat a head of family claim. Further, in the light of the purpose of the homestead exemption statute and the fact that Cecil was dependent upon Purvis more than he was dependent upon himself or his mother for very basic needs, the Court finds that Purvis satisfies the second element with regard to Cecil.

### Existence of a Role of Authority

Both Purvis and Gary testified that Purvis has authority over Gary while he lives in her home. This testimony is unrebutted, and is enough to prove the existence of Purvis's role of authority over Gary. On the other hand, Purvis did not testify, expressly, that she had an authority role over Cecil. However, Purvis was the owner of the home, Cecil gave Purvis his disability check so that she could pay his bills, and she made sure he took his medicine. Based on these facts, the Court finds that Purvis was in an authoritative

8

position over Cecil as well.

**Conclusion**

Purvis satisfies the three criteria required to qualify as "head of a family" under Arkansas law based on her relationship with her brothers, Gary and Cecil, respectively. Therefore, the Court finds that Purvis is entitled to the homestead exemption under § 522 as claimed on Schedule C. The trustee's objection is overruled as to the debtor's § 522 homestead exemption. Regarding the trustee's objection as to personal property values, Purvis's counsel conceded in his opening statement at the January 20 hearing that Purvis's claimed personal property exemption exceeds the amount allowed. Therefore, the trustee's objection on this point is sustained, and the debtor has twenty days to amend her personal property exemptions to conform with the trustee's objection.

IT IS SO ORDERED.

April 12, 2010                  /s/ Ben Barry
_____    _____
DATE                                       BEN T. BARRY
                                                    UNITED STATES BANKRUPTCY JUDGE

cc:   Pauletta J. Purvis, debtor
       Donald Jenkins, Jr., attorney for the debtor
       Thomas E. Robertson, Jr., chapter 7 trustee

EOD  4/13/2010
by J Fiallos-Flores